## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

TERRELL HUNTER,
      Petitioner,

    v.

No. 3:21-cv-1322 (SRU)

UNITED STATES OF AMERICA,
      Respondent.

### RULING DENYING PETITIONER'S SECTION 2255 PETITION

Terrell Hunter (*a.k.a.* "Rell" and "Killer"), proceeding *pro se*, has moved to vacate, set

aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  In his original petition, Hunter

claims that he is entitled to relief because his counsel provided unconstitutionally ineffective

assistance by failing to object to and appeal on the basis that the evidence was insufficient to

convict him.  In his amended petition, Hunter principally argues that the Supreme Court's

decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022), invalidates his conviction based on

18 U.S.C. § 924(c).  For the following reasons, Hunter's contentions are without merit and

provide no basis for relief.  His petition, as amended, is **denied**.

## I.    Factual and Procedural Background[1]

On August 21, 2018, following a jury trial, Hunter and co-defendants Gerund Mickens

and Harold Cook were convicted of Kidnapping Resulting in the Death of a Person, in violation

of 18 U.S.C. §§ 1201(a)(1) and 2 ("Count One"), and the Firearm-Related Murder of Charles

Teasley/Hobbs Act Robbery, in violation of 18 U.S.C. §§ 924(j)(1) and 2 ("Count Three").  Cr.

Docs. No. 1, 320.

---

[1] I refer to documents in Hunter's criminal case, *United States v. Hunter*, Dkt. No. 17-cr-65-3 (SRU), with the shorthand "Cr. Doc."; to documents in Hunter's Second Circuit appeal, *United States v. Cook*, Dkt. No. 20-258-CR, with the shorthand "App. Doc."; and to documents in this case without a shorthand for the case name.  When citing to transcripts, I refer to the transcript page number rather than the docket-stamped page number.

Each defendant thereafter moved under Federal Rule of Criminal Procedure 29 for a judgment of acquittal or, in the alternative, under Rule 33 for a new trial.  Hunter principally argued that he was entitled to set aside on the jury's guilty verdict on both counts of conviction because the evidence was insufficient to sustain his conviction.  Cr. Docs. No. 330, 441, 442. Regarding both Counts One and Three, Hunter argued, *inter alia*, that he was entitled to a judgment of acquittal under a theory that the purportedly deficient testimony of cooperating witness Jesus Ashanti was incredible on its face and defied physical realities.  *See generally* Cr. Doc. No. 441; Cr. Doc. No. 442, at 19-20.  In a lengthy written ruling reviewing and considering the evidence presented at trial, I concluded that the jury was entitled to take all of Ashanti's testimony into consideration when evaluating his credibility, and that the jury could rely on Ashanti's testimony in finding the defendants guilty.  Cr. Doc. No. 485, at 5-14.  Regarding Count Three specifically, Hunter incorporated by reference arguments made by his co-defendants, including that the government had failed to prove the interstate nexus element of Hobbs Act Robbery and, therefore, that he was entitled to a judgment of acquittal.  Cr. Doc. No. 442, at 20.  In my written ruling, I concluded that a jury could have found that the defendants had robbed a known drug dealer of money that the defendants knew was intended to be used for purchasing drugs, but for their interruption of the drug transaction, and that satisfied the interstate commerce requirement of Hobbs Act robbery as a matter of law.  Cr. Doc. No. 485, at 14-16.  Accordingly, I denied the defendants' motions on September 6, 2019.  *Id.* at 42.

In January of 2020, I sentenced each of Hunter, Mickens, and Cook to life imprisonment. Cr. Docs. No. 527, 550, 553.  Hunter was sentenced to concurrent life terms on each of his two counts of conviction.  Cr. Doc. No. 553.

Hunter and his co-defendants directly appealed their convictions to the United States Court of Appeals for the Second Circuit. Cr. Docs. No. 529, 559, 564. On appeal, Hunter reiterated his argument that the evidence was insufficient to convict him because Ashanti's testimony was incredible and defied physical realities; and he again adopted his co-defendants' arguments, including that the government had failed to satisfy the interstate commerce element necessary to convict the defendants of Hobbs Act robbery. *See generally* App. Doc. No. 100.

The Second Circuit affirmed the convictions by summary order on July 26, 2021. Cr. Doc. No. 582, *republished at United States v. Mickens*, 2021 WL 3136083, at *5 (2d Cir. July 26, 2021). After "thorough[ly]" evaluating the "totality of the record evidence," the Second Circuit rejected the defendants' Rule 29 sufficiency of the evidence argument on the basis that "a reasonable jury had a sufficient foundation to credit Ashanti's overall version of the events and determine that these three Defendants kidnapped, robbed, and murdered Teasley." Cr. Doc. No. 582, at 10.

Hunter and his co-defendants sought certiorari, which the Supreme Court denied. *See Hunter v. United States*, 142 S. Ct. 515 (2021) (Mem.).

Hunter now moves under 28 U.S.C. § 2255 to vacate his conviction and sentence. Pet., Doc. No. 1. In his original petition ("the Petition"), filed on October 5, 2021, Hunter sets forth two claims. First, Hunter argues that he was denied the effective assistance of counsel because his lawyers allegedly failed to object to, argue in post-trial motions that, and argue on appeal that the government failed to prove the essential interstate nexus element to establish a violation of 18 U.S.C. § 1201(a)(1), because "the conduct that formed the basis for the Kidnapping count[,]" apparently two phone calls placed into evidence in the trial record, "did not fall within the ambit of the statute allegedly violated." *Id.* at 2-4. Second, Hunter asserts that he was denied the

3

effective assistance of counsel because counsel allegedly failed to object to, argue in post-trial motions that, and argue on appeal that the government failed to prove that the firearm-related murder for which Hunter was convicted occurred during and in relation to the robbery of the murder victim. *Id.* at 4-5.

I entered an order to show cause, doc. no. 4, and the government responded by arguing that: (1) the Petition fails to state cognizable section 2255 claim, because it challenges the sufficiency of the trial evidence rather than the adequacy of Hunter's representation; (2) the claims asserted in the Petition were raised on appeal and are procedurally barred by the mandate rule; and (3) the ineffective assistance claims fail on the merits. *See generally* Doc. No. 10.

Hunter subsequently sought to supplement the Petition, which I construed as a motion to amend the Petition and granted. Docs. No. 11, 13. In the Amended Petition, Hunter principally argues that the Supreme Court's decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022), which held that attempted Hobbs Act robbery is not a "crime of violence" for the purposes of 18 U.S.C. § 942(c), compels the vacatur of his conviction for firearm-related murder in violation of 18 U.S.C. § 924(j). *See* Am. Pet., Doc. No. 11.

In response, the government contends that I should decline to review the new claims pursuant to the concurrent sentence doctrine; in the alternative, it contends that Hunter's supplemental challenges fail on the merits and/or are procedurally defaulted. *See generally* Doc. No. 13.

I decide this motion without a hearing because the motion and the files and records of the case conclusively demonstrate that Hunter is not entitled to relief. *See* 28 U.S.C. § 2255(b).

## II.      Legal Standards

### A.   Legal Standard for Section 2255

A section 2255 petition provides a prisoner in federal custody an opportunity to challenge

the legality of his or her sentence.  To obtain relief under section 2255, a petitioner must show

that his prior sentence was invalid because: (1) the sentence was imposed in violation of the

Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the

sentence; (3) the sentence exceeded the maximum detention authorized by law; or (4) the

sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).

The standard is stringent; even constitutional errors will not be redressed through a

section 2255 petition unless they have had a "substantial and injurious effect" that results in

"actual prejudice" to the petitioner.  *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637 (1993)

(internal citations omitted); *see also Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999)

(applying *Brecht*'s harmless error standard to section 2255 petitions).  The petitioner bears the

burden of proving that he or she is entitled to relief by a preponderance of the evidence.  *Triana*

*v. United States*, 205 F.3d 36, 40 (2d Cir. 2000).

A petitioner is barred from raising a claim on habeas review that was not properly raised

on direct review unless the petitioner is able to show "cause and actual prejudice" or "actual

innocence."  *Bousley v. United States*, 523 U.S. 614, 622 (1998) (cleaned up).  A petitioner may,

however, bring a claim of ineffective assistance of counsel that was not raised previously at trial

or on appeal.  *See Massaro v. United States*, 538 U.S. 500, 504 (2003).

### B.   Legal Standard for an Ineffective Assistance Claim

A petitioner asserting ineffective assistance of counsel must establish that (1) counsel's

performance was objectively deficient, and (2) that the petitioner was actually prejudiced as a

result. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. With respect to the performance prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct.'" *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). With respect to the prejudice prong, the petitioner must establish that that there is "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

A petitioner claiming ineffective assistance bears a heavy burden. "If an attorney made a strategic choice after thoughtful consideration, that decision will be 'virtually unchallengeable.'" *United States v. Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020) (quoting *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005)). "[E]ven strategic choices made after less than complete investigation do not amount to ineffective assistance—so long as the known facts made it reasonable to believe that further investigation was unnecessary." *Henry*, 409 F.3d at 63 (citing *Strickland*, 466 U.S. at 690–91). Indeed, courts have "declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox, or downright ill-advised." *Tippins v. Walker*, 77 F.3d 682, 686 (2d Cir. 1996). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter,* 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks omitted).

**III.    Discussion**

A.  <u>The Petition</u>

In the Petition, Hunter raises two challenges to his convictions and sentence, both of which he characterizes as violations of his Sixth Amendment right to effective assistance of counsel at the district court and on appeal.  I agree with the government, however, that the gravamen of the Petition's two claims is a challenge to the sufficiency of the evidence presented at trial.  As a result, Hunter fails to state a claim under 28 U.S.C. § 2255, and his claims are procedurally barred by the mandate rule.  Even if I did not reach that conclusion, I would still conclude that Hunter has not stated a claim of ineffective assistance of counsel on the merits.

1.  *Hunter fails to state a claim under 28 U.S.C. § 2255.*

The government argues that the two claims asserted in the Petition, though cloaked as arguments that Hunter's sentence was imposed in violation of the Sixth Amendment, actually collaterally attack his sentence under the theory that the evidence presented at trial was insufficient to sustain Hunter's convictions.  Doc. No. 10, at 4-5.  I agree with its characterization of the Petition.

First, Hunter claims that he was denied the effective assistance of counsel because his counsel allegedly failed to object to, argue in post-trial motions that, and argue on appeal that the government failed to prove the essential interstate nexus element to establish a violation of 18 U.S.C. § 1201(a)(1).  Pet., Doc. No. 1, at 2-4.  He contends that the two phone calls placed into evidence in the trial record, which constituted "the conduct that formed the basis for the Kidnapping count," "did not fall within the ambit of the statute allegedly violated."  *Id.*

Second, Hunter argues that he was denied the effective assistance of counsel because counsel allegedly failed to object to, argue in post-trial motions that, and argue on appeal that the

government failed to prove that the firearm-related murder for which Hunter was convicted occurred during and in relation to the robbery of Teasley. *Id.* at 4-5. Specifically, Hunter argues that the evidence was insufficient to establish that the stolen safe was physically taken from Teasley's possession and, thus, the "underlying conduct did not fall within the ambit of Title 18 U.S.C. 1951." *Id.* at 4.

Even though Hunter asserts that his motion raises a claim for ineffective assistance of counsel, he "does not credibly identify any specific actions his counsel took or failed to take, or any decisions that his counsel made, that constitute constitutionally ineffective assistance of counsel, or that prejudiced [him]." *Geddes v. United States*, 2018 WL 3213291, at *2 (D. Conn. June 29, 2018). "Rather, the record and Petitioner's own arguments in his Amended § 2255 Motion reveal that the gravamen of his complaint is with the sufficiency of the evidence that could have been used to convict Petitioner at trial." *Id.*

The result is that Hunter's sufficiency challenge is not cognizable under section 2255. Collateral relief under section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). A request for relief based on purportedly insufficient evidence that has already been rejected on direct appeal falls outside of those narrow parameters.

2.  *The mandate rule bars the claims in the Petition.*

Fatal to Hunter's claims challenging the sufficiency of the evidence is that Hunter already raised a sufficiency challenge in his direct appeal to the Second Circuit, precluding re-litigation of the sufficiency of the evidence in a subsequent section 2255 motion.

8

A section 2255 motion "may not relitigate issues that were raised and considered on direct appeal." *United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997).  The so-called "mandate rule" bars a petitioner from relitigating issues "already decided on direct appeal," "prevent[ing] re-litigation in the district court not only of matters expressly decided by the appellate court, but also preclud[ing] re-litigation of issues impliedly resolved by the appellate court's mandate." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010).  To determine whether an issue has been impliedly resolved, courts "look to both the specific dictates of the remand order as well as the broader spirit of the mandate." *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (quotation marks and citation omitted).  Reconsideration is only permitted if the court is "confronted with 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).

In this Court, Hunter's counsel moved to vacate Hunter's convictions on Counts One and Three, principally arguing that Hunter was entitled to set aside the jury's guilty verdict on both counts because the evidence was insufficient to sustain the convictions.  *See* Cr. Doc. No. 441, 442.  Regarding Counts One and Three, Hunter argued— and I disagreed— that he was entitled to a judgment of acquittal due to the deficient testimony of Jesus Ashanti.  Cr. Doc. No. 441; Cr. Doc. No. 485, at 5-14.  Regarding Count Three, Hunter incorporated by reference arguments made by his co-defendants that he was entitled to a judgment of acquittal because the government had failed to prove the interstate nexus element of Hobbs Act robbery, which I also rejected.  Cr. Dor. No. 442 at 20; Cr. Doc. No. 485, at 14-16.

On direct appeal, Hunter's counsel argued that the evidence was insufficient to sustain his conviction.  App. Doc. No. 100, at 16.  Hunter challenged that the government's case "rested almost entirely on" the testimony of Ashanti, which he contended was "both incredible on its face and . . . defie[d] physical reality."  *Id.* at 22-38.  He also adopted and incorporated by reference the substantially similar arguments of his co-defendants.[2]  *Id.* at 54.  After "thorough[ly]" evaluating the "totality of the record evidence," the Second Circuit rejected Hunter and his co-defendants' sufficiency challenge on the basis that "a reasonable jury had a sufficient foundation to credit Ashanti's overall version of the events," based both on Ashanti's testimony and that Ashanti's testimony was "generally corroborated by cell phone, ballistics, and DNA evidence."  Mandate, App. Doc. No. 156, at 10.  The panel further concluded that a jury had a sufficient basis to "determine that these three Defendants kidnapped, robbed, and murdered Teasley."  *Id.*  As evidenced by the Second Circuit's holding, Hunter's challenge to the sufficiency of the evidence has already been raised and decided on direct appeal.  Therefore, Hunter's claims are barred by the mandate rule.

Moreover, Hunter has not raised an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Becker*, 502 F.3d at 127.  Therefore, the Petition provides no basis to overcome the procedural bar imposed by the mandate rule.

---

[2] Mickens argued on appeal that the evidence was "insufficient to sustain the verdict as to all counts," likewise contending that the testimony of Ashanti was "incredible on its face and defied physical realities" and that "[t]he limited evidence consistent with Ashanti's testimony cannot sustain a conviction."  *See* App. Doc. No. 73, at 11-12, 19.  Cook also agued on direct appeal that there was insufficient evidence to sustain the convictions based on the assertion that the Government's case rested solely on the "patently incredible testimony of a cooperating witness" and that "there is no evidence corroborative of Jesus Ashanti's untrustworthy claims."  *See* App. Doc. No. 45, at 17, 23.

3.  *The Petition's ineffective assistance claims are without merit.*

Even if Hunter's claims were not barred, they would nevertheless fail on their merits.

    a.  Count One: Interstate Nexus of the Kidnapping Charge

Hunter argues that he was denied effective assistance of counsel for counsel's failure to object to and/or appeal from his conviction on Count One for kidnapping resulting in the death of a person because the evidence was allegedly insufficient to prove his guilt beyond a reasonable doubt.  Pet., Doc. No. 1, at 2.  The government, after contesting Hunter's characterization of counsel's performance, persuasively illustrates why Hunter's argument is without merit.

First, Hunter's characterization of counsel's performance is incorrect.  Hunter's lawyer argued at trial and on appeal that the evidence presented was insufficient to sustain the conviction on Count One.  *See generally* Cr. Docs. No. 441, 442; App. Doc. No. 100.

Second, Hunter cannot establish that counsel was constitutionally ineffective.  Hunter believes that his counsel should have challenged the sufficiency of the evidence with respect to the interstate nexus element, but "failure to make a meritless argument does not rise to the level of ineffective assistance," *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995).

As Hunter recognizes, "an intrastate telephone call . . .  constitutes the use of a facility in interstate commerce."  Pet., Doc. No. 1, at 3; *see United States v. Perez*, 414 F.3d 302, 305 (2d Cir. 2005).  Hunter also acknowledges that evidence presented at trial established cellular telephone calls that, first, had been "placed by a participant" in the kidnapping prior to the kidnapping and, second, by the victim "after he was abducted."  Pet., Doc. No. 1, at 3.  Taken together, Hunter appears to concede that the evidence presented at trial established the element of Count One that Hunter purports went unproven.  Notwithstanding that fact, although Hunter's claim is somewhat unclear, the Petition appears to argue that the calls were "outside the scope of

the statute" either because (1) Hunter was not the individual who placed the calls, or (2) the first call occurred before the kidnapping and the second call occurred thereafter. *See* Pet., Doc. No. 1, at 3. Neither theory warrants the requested relief.

One, Hunter asserts that "it must be noted that . . . it is the 'offender's' use of the instrumentality . . . that triggers federal jurisdiction over the kidnapping offense," suggesting that the evidence was insufficient because the government did not prove that he was the offender who had placed the calls. *Id.* But the jury could reasonably have found based on the evidence at trial that Hunter was personally criminally liable for using a cell phone in the commission of the kidnapping, or that he was liable as a principal for a co-defendant's use of a cell phone to effectuate the kidnapping. I do not know which theory of liability the jury selected. The verdict form did not specify whether the jury found Hunter liable under a theory that he was individually liable or liable for aiding and abetting his co-defendants.

That said, the trial record contained extensive evidence from which the jury could properly have found that Hunter committed the charged offense himself, as I concluded when ruling on the defendant's Rule 29 motion and the Second Circuit concluded when ruling on Hunter's direct appeal concerning the sufficiency of the evidence. The government specifically adduced evidence that Hunter had placed a phone call to "Fats" for the purpose of procuring firearms, that Hunter and his co-defendants drove to Fats's place at Oakland Terrace, that Hunter exited the vehicle there, and that Hunter returned to the vehicle with three handguns wrapped in a towel. Trial Tr. 8/9/18, Cr. Doc. No. 402, at 777-70. From this information, the jury could reasonably have concluded that Hunter's phone call resulted in obtaining the firearms used later that night to restrain Teasley in the back seat of Teasley's vehicle during the kidnapping.

Moreover, Hunter was charged in Count One with a substantive kidnapping offense and aiding and abetting the same.  Doc. No. 1, at 3 (charging 18 U.S.C. § 1201(a)(1) and 2).  When I charged the jury, I explained that the government had charged all three defendants with kidnapping Teasley, resulting in Teasley's death, and with aiding and abetting the other defendants in the commission of the kidnapping.  Trial Tr. 8/20/2019, Cr. Doc. No. 351, at 18, 20, 38 (stating that under 18 U.S.C. § 2, "[w]hoever commits an offense against the United States, or aids or abets or counsels, commands, or induces, or procures its commission, is punishable as a principal").  In addition to instructing the jury regarding the substantive kidnapping offense and its elements, *id.* at 20-26, I also instructed the jury concerning aiding and abetting and its elements, *id.* at 38.  In doing so, I clarified that it was not necessary for the government to show that a defendant physically committed the crime with which he was charged to find that defendant guilty, because a person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself.  *Id.* at 38.  The jury was thus informed that it could find Hunter guilty of Count One if it found that the government had proven beyond a reasonable doubt that: (1) another person actually committed the kidnapping; and (2) that the defendant knowingly aided or abetted that person in the commission of the kidnapping.  *Id.* at 38-41; *see* United States v. Ogando, 547 F.3d 102, 107 (2d Cir. 2008).  The trial record also contained extensive evidence from which the jury could properly have found that Hunter "joined [his co-defendants'] specific venture and shared in it, and that his efforts contributed to its success, or, in other words . . . that [he] consciously assisted in the commission of the [kidnapping offense] in some active way."  *Id.* (cleaned up).

Regarding the first element, another person actually committed the kidnapping, the jury did find that Hunter's co-defendants, Mickens and Cook, were guilty of kidnapping Teasley.

Regarding the second element, that Hunter knowingly aided or abetted his co-defendants in the commission of the kidnapping, the jury could reasonably have found that Hunter knowingly associated himself with the kidnapping and acted to help the kidnapping succeed.

The government adduced the following evidence from which the jury reasonably could have found that Hunter aided and abetted his co-defendants. Ashanti testified that he, Mickens, Cook, and Hunter frequently hung out together and "committed crimes together"; and that Hunter was aware that Ashanti frequently engaged in criminal activities. Trial Tr. 8/9/18, Cr. Doc. No. 402, at 768-70. Ashanti testified that, on January 9, 2009, he initially met up with Cook, Mickens, and Hunter for the purpose of robbing a different victim, but the original plan was aborted after Hunter and Cook each received phone calls of an indeterminate nature. *Id.* at 774-76, 781-86. Ashanti testified that the group made the stop at Oakland Terrace, where Hunter procured the towel containing the three handguns— one of which Hunter kept and the other two of which Hunter distributed to Mickens and Ashanti. *Id.* at 778-80. Ashanti testified that: Hunter entered Ashanti's vehicle; Hunter exited the vehicle in order to enter the driveway where the defendants intended to meet Teasley; upon Teasley's arrival, Hunter and Cook grabbed Teasley; Hunter grabbed the cash that Teasley threw onto the driveway; after Teasley was bound with zip-ties, Hunter (with the others) walked Teasley to Teasley's vehicle; Hunter was in the back seat next to Teasley with a firearm; and Hunter shot Teasley in the car's back seat. *Id.* at 790-816. DNA evidence supported Ashanti's testimony that Hunter had been in the car that night, and ballistics evidence supported Ashanti's testimony that Hunter had been one of the shooters. Cr. Doc. No. 485, at 12-13; Trial Tr. 8/13/18, Cr. Doc. No. 403, at 1153-54. Moreover, the jury was entitled to credit that Teasley's girlfriend, Kim Brookens, had identified Hunter as the individual to whom she had given the safe. Cr. Doc. No. 403, at 923-24.

In sum, the trial evidence supported that Hunter knowingly participated in the kidnapping, and that Hunter took affirmative and/or overt acts including but not limited to obtaining firearms, grabbing Teasley in the driveway, picking up Teasley's cash from the driveway, restraining Teasley's movements by confining Teasley in the back seat of his car at gunpoint, and holding Teasley to obtain the benefit of the contents of the safe.

Accordingly, even if Hunter was not the individual who placed the call to the group alerting them to Teasley's whereabouts, was not the person who received that call, or the person who placed the call to Brookens to induce her to bring the safe downstairs, the jury could have found that Hunter aided and abetted a completed kidnapping, and that he was liable as a principal for his co-defendant's use of the cell phone, an instrumentality of interstate commerce, to effectuate the kidnapping.

Two, Hunter's argument concerning the timing of the calls is equally unavailing. Regarding the first call, Hunter appears to refer to a call between Cook and Douglas Lee, whereby Lee alerted Cook and his co-defendants, including Hunter, that Lee was meeting up with Teasley for a drug deal. Trial Tr. 8/9/18, Doc. No. 402, at 785-86. Lee advised the others of the meetup location. *Id.* at 789-90. The group consisting of Hunter, Cook, Mickens, and Ashanti then drove to the meetup location, positioned themselves, and awaited Teasley's arrival. *Id.* at 790, 797. Thereafter, Hunter and his co-defendants robbed Teasley of his cash, bound him with zip-ties, and placed him in the back seat of his vehicle. *Id.* at 797-805. The evidence indicates that Lee's telephone call to Cook was "integral," as the government asserts, to Hunter and his co-defendants' successful effort to kidnap Teasley. Doc. No. 10, at 12.

Regarding the second call, Teasley, bound in the car's back seat and flanked by armed captors, was forced to call girlfriend Brookens and tell her to bring his safe downstairs to the

front door, which Hunter and his co-defendants believed would contain money and/or drugs. Trial Tr. 8/9/18, Doc. No. 402, at 658-60.  The jury could have found that upon arrival at Teasley's home, one of the defendants went to the door and took custody of the safe from the victim's girlfriend.  *Id.* at 660-67.  Brookens later identified Hunter in a photo line-up as the individual to whom she had given the safe, though she testified at trial that she was "not sure" of the identification.  *Id.* at 678-80.  Therefore, even though Hunter characterizes the call as occurring "after" the kidnapping, the call was indeed made *during* the kidnapping.  At the time of the call, Hunter and his co-defendants had physical custody of Teasley, and they were actively attempting to extract a benefit from him.

Accordingly, I agree with the government that the Petition's suggestion that the government failed to satisfy the interstate nexus element of Count One is entirely without merit. Because counsel is not required to make frivolous arguments, I cannot conclude that trial counsel's failure to object on the basis addressed herein constituted constitutionally ineffective assistance of counsel.

     b.  Count Three: Physical Taking of the Robbery Charge

Next, the Petition asserts that Hunter was denied effective assistance of counsel because his attorney failed to "object to and/or appeal from the conviction" on Count Three for use of a firearm to commit murder in the course of a Hobbs Act robbery "since the underlying conduct did not fall within the ambit of the Title 18 U.S.C. 1951."  Doc. No. 1, at 4-5.  Specifically, Hunter argues that the evidence was insufficient to establish that the stolen safe was physically taken from the person or presence of the victim.  *Id.* at 5.  This claim, in other words, likewise appears to argue that the government had not set forth sufficient evidence to prove beyond a reasonable doubt that Hunter committed a robbery.

Once again, Hunter appears to acknowledge that trial evidence established the element of the robbery offense he contends went unproven.  He concedes that "the jury was allowed to consider the taking of a safe . . . and the alleged taking of $1,100 in cash from the victims person."  *Id.* at 4.  Hunter thus acknowledges that trial evidence revealed that the defendants took $1,100 in cash directly from Teasley while in his presence and later robbed Teasley of his safe, in which Teasley had reportedly kept drugs and drug proceeds, by taking the safe from Teasley's home via Brookens.  *See* Trial Tr. 8/9/18, Doc. No. 402, at 658-59, 660-64.  Both takings occurred while Hunter and his co-defendants were armed with loaded firearms, and the defendants forced Teasley to throw the cash onto the driveway and to call Brookens to obtain the safe.  *See* Trial Tr. 8/9/18, Doc. No. 402, at 778-814.  Moreover, even though Hunter acknowledges that both takings occurred, he brushes past the first one— the taking of the cash— and concentrates instead on his argument that because Teasley "was in no way in close proximity to the safe when it was taken," the safe "could not be said to have been property taken in a 'robbery.'"  Pet., Doc. No. 1 at 5.

As a threshold matter, Hunter is wrong on the law.  Section 1951(a) penalizes a person who "in any way or degree obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section."  Subsection 1951(b)(1) defines "robbery" as:

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

17

18 U.S.C. § 1951(b)(1).  The statute, however, does not require that a victim physically possess the item taken for a robbery to occur.  *Cf. United States v. Soler*, 759 F.3d 226, 235 (2d Cir. 2014) (holding under 18 U.S.C. § 2119 that a motor vehicle is "in the presence of the victim" where it is "within his or her reach, inspection, observation, or control that he or she could, if not overcome by violence or prevented by fear, retain possession of it" and affirming that a car parked on the curb was "in the presence of" a carjacking victim robbed inside of her home). Under the definition of robbery embraced by the Second Circuit, the jury was "permitted to [] find," as Hunter recognizes, that the safe was "in the presence of" Teasley within the meaning of the Hobbs Act.  Pet., Doc. No. 1, at 5.  Therefore, the argument that Hunter advances is without merit.  Counsel did not exhibit deficient performance for failure to raise it, and Hunter did not suffer any prejudice for counsel's failure to do so.

In light of the foregoing, Hunter fails to establish that trial counsel provided constitutionally ineffective assistance meriting vacatur of Hunter's convictions on Counts One and Three.

B.  The Supplemental Claims

In the Amended Petition, Hunter argues that the Supreme Court's decision in United States v. Taylor, 142 S. Ct. 2015 (2022), holding that attempted Hobbs Act robbery is not a crime of violence under 18 U.S.C. § 924(c), requires that this Court vacate his conviction on Count Three for firearm-related murder under 18 U.S.C. § 924(j), which increases the penalty for section 924(c) violations when a defendant "causes the death of a person" through the use of a firearm.  The government argues that I should decline to review the claims in the Amended Petition pursuant to the concurrent sentence doctrine, because the new claims challenge one of the counts of conviction, and his sentences on both counts of conviction are concurrent.  In the

18

alternative, the government argues that Hunter's claims fail on the merits and/or are procedurally defaulted.

I agree that, to any extent Hunter that presents a collateral challenge rather than a veiled appeal of the sufficiency of the evidence, I may decline to review Hunter's additional claims under the concurrent sentence doctrine. Hunter was sentenced to concurrent life terms on each count of conviction. The Amended Petition states habeas claims that only relate to Count Three, but a favorable decision concerning Hunter's challenge to one of the two counts of conviction will not shorten his sentence. Therefore, I may decline to review his challenge. *See* Kassir v. United States, 3 F.4th 556, 569 (2d Cir. 2021) ("Courts may decline to consider collateral challenges to a conviction's validity if the petitioner is concurrently serving an equal or longer sentence on another valid count of conviction.").

Moreover, even if I take up the claims raised by the Amended Petition, Hunter would still not be entitled to relief. The Amended Petition contends that *Taylor* requires vacatur of Hunter's conviction on Count Three because (1) the Hobbs Act robbery statute is indivisible between completed and attempted offenses, (2) a completed Hobbs Act robbery is not categorically a "crime of violence," and (3) dismissal of Count Two (charging murder based on federal kidnapping in violation of 18 U.S.C. § 924(j)) caused this Court to lose jurisdiction over Count Three (murder based on Hobbs Act robbery, in violation of 18 U.S.C. § 924(j)). The new claims in the Amended Petition are without merit.

1. *Completed Hobbs Act robbery is categorically a crime of violence for purposes of 18 U.S.C. § 924(c)(3)(A).*

Neither of Hunter's arguments that the Hobbs Act robbery statute is not "divisible" between completed and attempted offenses nor that Hobbs Act robbery is not a "crime of violence" under section 924(c)(3)(A) compel vacatur of his conviction on Count Three.

19

Under section 924(c), a federal felony qualifies as a "crime of violence" if it is a felony and "ha[s] as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).  "[T]o determine whether a federal felony may serve as a predicate for a conviction and sentence under the elements clause," a court applies the so-called "categorical approach," by which "[t]he only relevant question is whether the federal felony at issue always requires the government to prove— beyond a reasonable doubt, as an element of its case— the use, attempted use, or threatened use of force."  *Taylor*, 142 S. Ct. at 2021.

In *Taylor*, the Supreme Court held that attempted Hobbs Act robbery was not categorically a crime of violence for purposes of section 924(c)(3) because the government is not categorically required to prove use, attempted use, or threatened use of force.  *See* 142 S. Ct. at 2020.  The Court reasoned that for the government to obtain a conviction for attempted Hobbs Act robbery, it must prove both that "(1) [t]he defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a substantial step toward that end."  *Id*. (quotation marks and citation omitted).  "[A]n intention to take property by force or threat," however, "is just that, no more."  *Id*.  And proof of a substantial step "does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property."  *Id*.  Therefore, "[w]hatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause."  *Id*. (emphases original).

The predicate offense for the section 924(c) count in this case, however, is *completed* Hobbs Act robbery.  Since Hunter filed the Amended Petition, the Second Circuit reaffirmed its earlier decisions, including *United States v. Hill*, 890 F.3d 51 (2d Cir. 2018), in which it held that

"completed Hobbs Act robberies are categorically crimes of violence pursuant to section 924(c)(3)(A)." United States v. McCoy (McCoy II), 58 F.4th 72, 74 (2d Cir. 2023). In *McCoy II*, the Second Circuit upheld the petitioners' section 924(c) convictions predicated on a completed Hobbs Act robbery because there is "nothing in *Taylor*'s language or reasoning that undermines [the Second Circuit's] settled understanding that completed Hobbs Act robberies are categorically crimes of violence pursuant to section 924(c)(3)(A)." *Id.* (citing *Hill*, 890 F.3d at 56–60; *United States v. McCoy (McCoy I)*, 995 F.3d 32, 53-55 (2d Cir. 2021)). Even after *Taylor* was decided, the Second Circuit has repeatedly reiterated that completed Hobbs Act robberies are categorically crimes of violence for purposes of 18 U.S.C. § 924(c). *See* United States v. Waite, 2023 WL 3730447, at *1 (2d Cir. May 31, 2023) (summary order) (applying *McCoy II* to affirm a conviction predicated on completed Hobbs Act robbery); *Mendez v. United States*, 2022 WL 17684586, at *2 (2d Cir. Dec. 15, 2022) (summary order) (holding that "Hobbs Act robbery itself remains a valid predicate crime of violence for convictions under § 924(c)").

Based on the foregoing, Second Circuit precedent forecloses Hunter's arguments that the Hobbs Act is not a divisible statute and that completed Hobbs Act robbery is not a crime of violence under section 924(c)(3)(A). Accordingly, the Amended Petition fails to demonstrate that Hunter is entitled to the requested relief.

2. *The claim that the Court, after dismissing Count Two, lacked jurisdiction over Count Three is procedurally defaulted and meritless.*

In his final argument, Hunter appears to argue that dismissal of Count Two (charging firearm-related murder arising out of a federal kidnapping under 18 U.S.C. § 1201(a)(1)) somehow caused the Court to lose jurisdiction over Count Three (charging firearm-related murder arising out of a Hobbs Act robbery under 18 U.S.C. § 1951). Doc. No. 11, at 5. I agree with the government that this argument is both confusing, procedurally defaulted, and meritless.

The argument is procedurally defaulted, because Hunter could have and did not raise it on direct appeal.  Moreover, Hunter shows neither cause-and-prejudice nor actual innocence justifying review despite the procedural default.

Nevertheless, I reach the claim because it is meritless.  As the government sets forth, Counts Two and Three were separate counts of conviction based on separate predicate offenses.  Count Three neither cross references nor otherwise depends on Count Two.  There is no reason that dismissing Count Two had any jurisdictional effect on Count Three.

In light of the foregoing, the Amended Petition fails to set forth a valid basis for relief based on this purported jurisdictional issue.

## IV.    Conclusion

For the foregoing reasons, the motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, as amended (docs. no. 1, 11), is denied.

Hunter has not made a substantial showing of the denial of a constitutional right.  Accordingly, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c)(2).

The Clerk is directed to close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 31st day of August 2023.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge